

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00211-CV

**IN THE INTEREST OF R.M.V.**, a Child

From the 73rd Judicial District Court, Bexar County, Texas
Trial Court No. 2018-PA-00202
Honorable John D. Gabriel, Jr., Judge Presiding

Opinion by:     Luz Elena D. Chapa, Justice

Sitting:        Rebeca C. Martinez, Justice
                Luz Elena D. Chapa, Justice
                Beth Watkins, Justice

Delivered and Filed: July 10, 2019

AFFIRMED

Ray[1] appeals the trial court's order terminating his parental rights to his child, R.M.V. Ray

challenges the sufficiency of the evidence supporting the trial court's finding that termination is in

the child's best interest. We affirm the trial court's judgment.

### BACKGROUND

The Texas Department of Family and Protective Services removed R.M.V. and her younger

half-brother from their mother's custody after R.M.V. made outcries of witnessing her mother

using drugs and leaving the children home alone without food. The Department filed a petition in

February 2018 to terminate the parental rights of Ray, the mother, and the younger child's father.

---

[1] To protect the identity of the minor child, we refer to the appellant by his first name only and the child by her initials. *See* TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

At the time this case was initiated, Ray was living in a halfway house following his release from prison in December 2017. In April 2018, Ray removed his ankle monitor and went "on the run" until he turned himself in to authorities in October 2018. Ray admitted he was aware of this case as early as June 2018, but he did not contact the Department caseworker until January 2019 because "he was on the run and had a lot of things going on that he was trying to take care of." Ray was personally served with citation on January 3, 2019.

When Ray contacted the Department, he expressed a desire to engage in services and was given a service plan requiring him to attend counseling and a parenting class. By the time the trial court held a bench trial on March 19, 2019, Ray had begun services but had not completed them. R.M.V.'s mother and the other child's father did not personally appear at trial. Ray appeared for trial with counsel and announced "not ready." The trial court overruled Ray's "not ready" announcement.

The Department caseworker testified R.M.V. was eleven years old on the date of trial. Ray admitted to the caseworker that he had not seen R.M.V. in nine years. The caseworker attempted to arrange communication between Ray and R.M.V., but R.M.V. did not want to communicate with him at that time. The caseworker informed Ray he could write R.M.V. a letter, but he did not do so. Because Ray had not asked about R.M.V. or inquired about visiting her, the caseworker concluded Ray had not displayed a desire to have a relationship with R.M.V. Ray "has an address" and is employed, but the caseworker did not visit Ray's home or inquire into his living situation and employment. Shortly before trial, Ray admitted to the caseworker that he had used marijuana in October 2018.

At the time of trial, R.M.V. and her brother were placed with their maternal aunt and uncle. Both children were doing well in the placement and expressed a desire to remain there. The aunt and uncle were meeting the children's emotional and physical needs, providing them a safe, stable,

and loving home, and taking the children to counseling and extracurricular activities. The caseworker observed a visible bond and attachment between the children and their aunt and uncle. R.M.V.'s aunt testified she believes the children are happy living with her, and she wants to adopt them. The caseworker testified she believes that if the children are removed from their current placement and returned to their parents they will "suffer severe emotional trauma."

Ray testified he personally visited R.M.V. more than one dozen times in eleven years and last saw her in 2011. Ray also testified he paid child support for R.M.V. until 2011. Although Ray has not seen R.M.V. since he was released from prison in December 2017, he testified he turned himself in to authorities in October 2018 so he could be involved with R.M.V. and this case. While incarcerated, Ray voluntarily availed himself of parenting and anger management classes because he has the desire to be in R.M.V.'s and his other children's lives and give them the things he did not have. Ray testified that while this case was pending, he asked R.M.V.'s aunt three times if he could visit R.M.V., but the aunt said that was not possible.

Ray admitted he has two prior convictions for injury to a child. In 2011, Ray was convicted of intentionally and knowingly causing body injury to a child younger than fourteen. Ray's parental rights to that then two-year-old child and another child were subsequently terminated in 2014. In 2017, Ray was convicted of serious bodily injury by omission to a child younger than fourteen. That child was Ray's girlfriend's infant daughter, who died of malnourishment after being released from the hospital to live with Ray and his girlfriend.

Following trial, the trial court granted the Department's petition for termination and terminated Ray's and the other parents' parental rights to both children. Ray appeals.

### STANDARD OF REVIEW

To terminate parental rights, the Department must prove by clear and convincing evidence: (1) one of the predicate grounds in subsection 161.001(b)(1), and (2) termination is in the child's

best interest. TEX. FAM. CODE §§ 161.001(b), 161.206(a). We review the legal and factual sufficiency of the evidence using well-established standards of review. *See id.* § 101.007; *In re J.F.C.*, 96 S.W.3d 256, 263–67 (Tex. 2002).

## DISCUSSION

In a single issue, Ray challenges the trial court's finding that termination is in R.M.V.'s best interest. There is a strong presumption that keeping a child with a parent is in a child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). In determining the best interest of a child, we apply the non-exhaustive *Holley* factors. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). Those factors include: (1) the desires of the child; (2) the present and future emotional and physical needs of the child; (3) the present and future physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans held by the individuals seeking custody; (7) the stability of the home of the parent and the individuals seeking custody; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.*

Here, R.M.V. expressed a desire to remain with her aunt and uncle and rejected the Department's attempts to facilitate communication with Ray. R.M.V.'s aunt testified: "[R.M.V.] doesn't want to see [Ray]. I asked her . . . what does she want, and she told me she—she doesn't know her dad. She doesn't want—she's afraid." R.M.V.'s aunt and uncle have demonstrated they can meet R.M.V.'s present and future emotional and physical needs, while the Department caseworker testified Ray has not demonstrated the ability to do so. The Department caseworker believes it would be traumatic for R.M.V. to be removed from her aunt and uncle, who plan to adopt R.M.V. and her brother.

Although Ray has expressed a desire and willingness to work services in order to be reunited with R.M.V., he failed to contact the Department or engage in services for six months after he became aware of this case. Ray testified he currently has stable housing, but while the case was pending, Ray was "on the run" from authorities and later incarcerated. Ray also admitted to using marijuana while the case was pending and to two prior convictions for injuring other children. While Ray testified he wants to have a relationship with R.M.V., he has not seen her in years, did not write her a letter when given the opportunity to do so, and did not ask the caseworker any questions about R.M.V. or ask the caseworker to visit R.M.V. The Department caseworker testified Ray had not displayed a desire to have a relationship with R.M.V.

After considering all of the evidence in the record in light of the *Holley* factors, we conclude legally and factually sufficient evidence supports the trial court's best interest finding.

## CONCLUSION

We overrule Ray's sole issue and affirm the trial court's order of termination.

Luz Elena D. Chapa, Justice